635 So.2d 813 (1994)
Johnny Rufus LANIER
v.
STATE of Mississippi.
No. 91-KP-00875.
Supreme Court of Mississippi.
March 31, 1994.
*814 Johnny Rufus Lanier, pro se.
Michael C. Moore, Atty. Gen., John R. Henry, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
EN BANC.
*815 PRATHER, Presiding Justice, for the Court:
Lanier appeals the August 1991 denial of his petition for post-conviction relief by the Lauderdale County Circuit Court. Although Lanier entered into an agreement with the State whereby he agreed to waive any right to parole, he now challenges the propriety of his sentence  life imprisonment without the possibility of parole. Because the contract by which Lanier waived any present and future rights to parole is void and unenforceable on public policy grounds, this Court remands for resentencing within the strictures of Miss. Code Ann. § 99-19-101 (Supp. 1993).

I. PROCEDURAL HISTORY
Johnny Rufus Lanier was indicted for capital murder in the December 28, 1985 murder, kidnapping, and aggravated assault of Alma Walters, a Meridian police officer. Venue was changed from Lauderdale County to Covington County, where Lanier was tried, convicted, and sentenced to death. On appeal, this Court affirmed the guilty verdict but, based on a confrontation clause violation by the State, reversed and remanded for a new sentencing hearing. See Lanier v. State, 533 So.2d 473 (Miss. 1988).
On remand, the State agreed to forego a sentencing hearing, thus forfeiting the right to seek the death penalty, in exchange for Lanier's waiver of any future right to apply for parole on the capital murder charge. At a hearing before the circuit court on October 27, 1989, the judge accepted Lanier's waiver. Lanier was represented by five attorneys[1], all of whom were in favor of Lanier's agreement with the State and felt it was in Lanier's best interest. All five attorneys assured the court that Lanier understood the terms and implications of the agreement.
The circuit judge questioned Lanier extensively about his agreement with the State and the rights he waived by signing it. Lanier acknowledged that he had discussed the agreement with his attorneys and that he understood he was giving up all present and future rights to parole on the capital murder charge. Lanier further understood that his sentences for the three offenses (murder, kidnapping, aggravated assault) were to run consecutively, beginning with his life sentence for the murder.
In response to questions from the court, Lanier responded that he had not been threatened or coerced to accept the agreement with the State. Lanier and his attorneys then signed the agreement, which provided Lanier was "sentenced to serve a life sentence with the Mississippi Department of Corrections without eligibility for parole." Accordingly, the circuit judge sentenced Lanier to life without parole.
On April 11, 1991, Lanier offered a motion to "Reduce, Modify and/or Correct Sentence," which was ultimately filed by the Circuit Clerk of Lauderdale County on April 30, 1991. Lanier alleged the following three grounds for post-conviction relief:
1. His sentence violated the constitutions of the United States and the State of Mississippi;
2. His sentence exceeded that allowed by law; and
3. He received ineffective assistance of counsel at the sentencing phase.
On May 3, 1991, the circuit judge entered an order directing the State to answer Lanier's petition and requiring answers from two of the attorneys who had represented Lanier at trial. The circuit judge stated explicitly in his order that he was expanding the record pursuant to Miss. Code Ann. § 99-39-17.
Lanier's motion was denied by the circuit judge on August 20, 1991. The judge noted Lanier challenged only the validity of the sentence agreed to for capital murder, yet did not seek to withdraw or breach his "Waiver of Parole Rights" agreement. Consequently, the trial court found only one question needed to be addressed: Is the "no parole" provision in the sentence imposed upon Lanier for his capital murder conviction valid? The trial judge further concluded that this was a question of law; therefore, no evidentiary hearing was necessary. The *816 court then found that, as a matter of law, the "no parole" provision of Lanier's sentence was "a valid part of the sentence imposed on the Petitioner."
Lanier now appeals the denial of his petition for post-conviction relief, alleging two errors by the trial court. Only the first issue warrants discussion:
Whether the trial court erred in its holdings that the waiver of Lanier's future right to apply for parole was valid and the "no parole" provision was a valid part of the sentence.

II. VALIDITY OF WAIVER
While the agreement between the State and Lanier, as embodied in the document labeled "WAIVER OF PAROLE RIGHTS," has all the indicia of a valid contract, it is nonetheless void as against public policy. As thoroughly discussed by Presiding Justice Lee in his dissent, all essential elements of a contract are present; the right to parole was anticipatorily waived by Lanier voluntarily, knowingly, and on the advice of five attorneys; and the State fulfilled its promise to not seek the death penalty. Moreover, the dissent asserts, deletion of the "without parole" provision of Lanier's sentence does not affect the agreement between Lanier and the State. Nonetheless, this Court holds that the "contract" is invalid.

III. ENFORCEABILITY OF CONTRACT
Enforcement of the contract between Johnny Rufus Lanier and the State would result in a sentence which is not authorized by law. Pursuant to Miss. Code Ann. § 99-19-101(1) (Supp. 1993), the sentencing options available to one convicted of capital murder are life imprisonment or death. Life imprisonment without the possibility of parole is not an option unless the convict is adjudged an habitual offender. Miss. Code Ann. §§ 99-19-81, 99-19-83 (Supp. 1993). Lanier was not indicted as, and apparently was not, an habitual offender; therefore a life sentence qualified by the preclusion of parole is not available to Lanier.
Enforcement of the contract would also yield a result beyond the power of this Court to produce. The legislature has established our parole system and the extent of possible sentences for crimes. See Miss. Code Ann. Title 47, Chapter 7 (Probation and Parole) and Titles 97 and 99 (Crimes, Criminal Procedure). The judiciary is responsible for trying those accused of crimes and for imposing sentences authorized by the legislature. But it is the executive branch, via the parole board, that implements the legislature's parole policies and determines the actual time served by those convicted of crimes. Miss. Code Ann. § 47-7-5(3) (1972). It follows that enforcement of the contract by this Court would effect judicial encroachment on an executive function. In other words, enforcement would bind the parole board, which took no part in the negotiations with Lanier.
Although the right to contract is fundamental, contracts contrary to public policy are unenforceable. Hertz Commercial Leasing v. Morrison, 567 So.2d 832, 834 (Miss. 1990); First Nat. Bank of Vicksburg v. Caruthers, 443 So.2d 861, 864 n. 3 (Miss. 1983). Our statutes are enactments of the public policy of this state. Grisham v. Hinton, 490 So.2d 1201, 1209 (Miss. 1986) (Robertson, J., concurring). Indeed, regarding invalidation of contracts on public policy grounds, this Court has said that the public policy of this state is "found in its constitution and statutes, `and when they have not directly spoken, then in the decisions of the courts and the constant practice of the government officials.'" Cappaert v. Junker, 413 So.2d 378, 380 (Miss. 1982), quoting State ex rel Knox v. Hines Lbr. Co., 150 Miss. 1, 48, 115 So. 598, 605 (1928).
The contract between Lanier and the State relates not merely to the parties' private business, but to matters of public concern. Both Miss. Code Ann. § 99-19-101 and this Court's interpretation of this statute have consistently allowed only two sentencing options for one convicted of capital murder: death or life imprisonment, not qualified by preclusion of parole. The contract at issue is an attempt to circumvent § 99-19-101, and as such, this contract is void ab initio on the *817 ground that it violates the public policy of this state.[2] As a result, both parties are placed back in the positions which they occupied prior to entering into the agreement. Sullivan v. Pouncey, 469 So.2d 1233, 1234 (Miss. 1985). Lanier once again has the right to be sentenced by a jury and the State once again has the right to seek the death penalty.

IV. DOUBLE JEOPARDY
In Bullington v. Missouri, 451 U.S. 430, 446, 101 S.Ct. 1852, 1862, 68 L.Ed.2d 270 (1981), the United States Supreme Court held that because the sentencing proceeding under Missouri law is similar to a trial, the double jeopardy protection afforded to one acquitted of a crime after a trial is also afforded to one "acquitted" of the death penalty at his initial sentencing proceeding. Mississippi's sentencing proceeding, like that of Missouri, consists of a hearing separate from the guilt/innocence phase of the trial, where the jury has a choice between life and death and is presented with standards to guide that choice. Moreover, the State has the burden of establishing certain facts beyond a reasonable doubt at the sentencing hearing in order to have the death penalty imposed. Since our capital sentencing procedure requires the jury to determine whether the State has proved its case for the death penalty, just as the Missouri sentencing procedure does, the double jeopardy clause will protect a defendant from any subsequent attempt to subject him to the death penalty after a jury has impliedly acquitted him of the death penalty by determining that only a life sentence is warranted.
However, Lanier has not yet been acquitted of the death penalty. At his initial sentencing proceeding, the jury found that the prosecution had indeed proved its case and sentenced Lanier to death.[3] On appeal, this Court reversed, yet did not find that the State had failed to prove its case for the death penalty. On remand the State did not fail to prove its case for the death penalty  it refrained from putting on its case in exchange for Lanier's agreement to be sentenced to life without parole. It follows that the judge's imposition of a life sentence was not an acquittal of the death penalty for Lanier: no adjudication on the merits was necessary or possible in light of the agreement between Lanier and the State. In sum, neither Lanier's initial sentencing proceeding, which resulted in the death penalty, nor his subsequent agreement with the State, which resulted in a life sentence, affords him the protection of the double jeopardy clause to prevent the State from seeking the death penalty on resentencing.
While the double jeopardy clause prevents a state from sentencing a convicted defendant to death after an initial life sentence is set aside on appeal, Arizona v. Rumsey, 467 U.S. 203, 205, 104 S.Ct. 2305, 2306, 81 L.Ed.2d 164 (1984)[4], this protection avails Lanier nothing because his initial sentence which was set aside on appeal was death. The reasoning in Rumsey, as in Bullington, is that initial imposition of a life sentence is equivalent to "an on the merits acquittal of the death penalty and bars any subsequent attempt to seek the death penalty. Rumsey, 467 U.S. at 211, 104 S.Ct. at 2310.[5]
More instructive for today's case is Poland v. Arizona, 476 U.S. 147, 106 S.Ct. 1749, 90 *818 L.Ed.2d 123 (1986)[6]. When asked to determine whether the double jeopardy clause prevents further capital sentencing proceedings when, on appeal from a death sentence, the appellate court found the evidence insufficient to support the only aggravating factor found by the sentencing judge, but did not find the evidence insufficient to support the death penalty, the United States Supreme Court answered in the negative. See generally Poland v. Arizona, 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986). In Poland, the initial sentencing by a judge resulted in imposition of the death penalty. On appeal, the Arizona Supreme Court found that the sentencing judge erred, but it did not find that the State had failed to prove its case for the death penalty. "[B]ecause the reviewing court did not find the evidence legally insufficient to justify imposition of the death penalty, there was no death penalty `acquittal' by that court" and double jeopardy would not prohibit the State from seeking the death penalty at a subsequent sentencing hearing. Poland, 476 U.S. at 157, 106 S.Ct. at 1756.
Similarly, in the instant case, Lanier was initially sentenced to death by a jury. On appeal, this Court found that a confrontation clause problem required reversal of Lanier's death sentence, but did not find that the State had failed to prove its case for the death penalty. Restated, there was no death penalty acquittal by this Court; consequently, the double jeopardy clause would not prohibit the State from seeking the death penalty at a subsequent sentencing hearing.
However, no sentencing hearing was held on remand. Instead, Lanier and the State entered into a sentencing agreement which this Court now finds void ab initio  a legal nullity  affording neither of the parties any legally enforceable rights. It follows that this legal nullity could have had no effect on jeopardy, therefore the double jeopardy clause still would not prohibit the State from seeking the death penalty. Even if not treated as a nullity, the imposition of a life sentence pursuant to the agreement was in no way an acquittal of the death penalty, therefore double jeopardy does not provide an obstacle to a subsequent sentence of death. The judge could not have decided that the State failed to prove its case for the death penalty because the State did not present its case for the death penalty and the judge made no determination on the merits.
The double jeopardy clause provides protection against reprosecution for the same offense after an acquittal as well as after a conviction.[7] It also protects against multiple punishments for the same offense. Jones v. Thomas, 491 U.S. 376, 381, 109 S.Ct. 2522, 2525, 105 L.Ed.2d 322 (1989), citing North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). This third ambit of protection prevents punishments which in combination exceed that authorized by the legislature. Jones, 491 U.S. at 381, 109 S.Ct. at 2525. Where credit for time served under the original sentence is applied toward fulfillment of the sentence imposed at a second trial after appeal, and the convicted defendant is not thereby made to serve more than that authorized by the legislature, there is no double jeopardy violation. Jones, 491 U.S. at 378-81, 109 S.Ct. at 2523-26.
The double jeopardy clause affords Lanier no protection against further capital sentencing procedures. If Lanier is subsequently sentenced to life imprisonment, he must be credited with the time already served. If, on the other hand, Lanier is resentenced to death, it will be impossible to credit the time already served. This does not, however, violate double jeopardy.[8]
*819 The double jeopardy clause prevents the prosecution from obtaining a conviction or an increased penalty by virtue of sheer perseverance, i.e., repeated prosecutions. Bullington, 451 U.S. at 445, 101 S.Ct. at 1861. In this case, Lanier has voluntarily shouldered the burden and concomitant risk of resentencing.

V. EFFECT OF AMENDMENT OF SENTENCE
Assuming arguendo the contract at issue were valid, should this Court simply amend Lanier's sentence to life imprisonment by deleting the "without parole" provision as suggested by Lanier, the effect would be to hold the State to the contract while allowing Lanier to shirk his contractual duty. The State has already carried out its end of the bargain by not pursuing the death penalty for Lanier. Now that Lanier has obtained this benefit, he seeks to be excused from his promise to forego any right to parole. By granting Lanier the relief he requests, this Court would be aiding him in manipulation of the criminal justice system. However, the contract is void, affording neither party any legally enforceable rights.
By merely deleting the "without parole" provision from Lanier's sentence, this Court would bring Lanier's sentence within the parameters of § 99-19-101. However, since the sentencing agreement between Lanier and the State is void as against public policy, the sentence imposed pursuant to such agreement is invalid and void. Consequently, it is not subject to amendment.

VI. CONCLUSION
Unless and until the people, through the legislature, see fit to add a third sentencing option to the two which already exist for capital murder, this Court will not engage in judicial legislating in order to circumvent the statutory scheme. It is for the legislature, rather than for this Court, to discover and implement the public policy of this state. Furthermore, even if the contract were valid, this Court should not infringe upon the province of the executive branch, but instead should trust the parole board to perform its duties in a competent and responsible manner.
To be true to our capital murder statutory sentencing scheme, only one option is available: this Court must find the contract between Lanier and the State is void as against public policy and remand for resentencing within the strictures of Miss. Code Ann. § 99-19-101. No other result is just and in full compliance with the public policy of this state as reflected by Miss. Code Ann. § 99-19-101 and this Court's consistent interpretation of this statute. Although resentencing by a jury will likely be more favorable to Lanier than to the State, due to the decreased likelihood of a jury's imposing the death penalty when so much time has passed, it is the law which must guide this Court to the result, rather than vice versa. Nothing in this opinion is intended to, nor does it, prevent Lanier and the State from entering into a new sentencing agreement which does not violate Miss. Code Ann. § 99-19-101.
As the agreement between Lanier and the State is void as against public policy, this Court remands this cause to the circuit court of Lauderdale County for resentencing within the strictures of Miss. Code Ann. § 99-19-101.
DENIAL OF PETITION FOR POST-CONVICTION RELIEF REVERSED AND REMANDED FOR RESENTENCING.
PITTMAN, BANKS and SMITH, JJ. concur.
HAWKINS, C.J., concurs with separate written opinion joined by SULLIVAN, J.
DAN M. LEE, P.J., dissents with separate written opinion joined by McRAE and JAMES L. ROBERTS, Jr., JJ.
McRAE, J., dissents with separate written opinion joined by DAN M. LEE, P.J., and JAMES L. ROBERTS, Jr., J.
HAWKINS, Chief Justice, specially concurring:
I concur with the majority that, despite Lanier's wholehearted assent thereto at the time, the "without parole" portion of his life *820 sentence was beyond statutory authority, invalid and must be struck.
Both the dissent and the majority opinions are well-written, well-documented and well-reasoned. My comment on them both is prompted by a perception, at least to me, that each illustrates a good example of failure to exercise judicial restraint.
One form of judicial restraint is an acknowledgement that, because there is no legislative or executive check to a judicial assertion of power, a judge should be especially cautious that his every exercise of power is within the limits authorized by Constitution or statute. "While unconstitutional exercise of power by the executive and legislative branches of the government is subject to judicial restraint, the only check upon our own exercise of power is our own sense of self-restraint." United States v. Butler, 297 U.S. 1, 78, 56 S.Ct. 312, 324, 80 L.Ed. 477, 495 (1936). The judge as guardian and trustee of the law must be especially careful that he, above all others, sets the proper example in acting within its bounds. "It is he (the judge) who truly embodies the law as a guardian of the rights of defendants to justice under law." In re Sawyer, 360 U.S. 622, 665, 79 S.Ct. 1376, 1397, 3 L.Ed.2d 1473 (1959) (Frankfurter, J., dissenting).
Another form of judicial restraint is refraining from expressing law on subjects not before the Court, and unnecessary to a decision in this case. As Justice Powell noted in United States v. Richardson, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974), the founding fathers recognized the importance of judicial restraint:
It (i)s "necessary that the Supreme Judiciary should have the confidence of the people ...", and this would "soon be lost, if they are employed in the task of remonstrating against popular measures of the Legislature." Moreover, the "Judges ought never to give their opinion on a law till it comes before them."
Richardson, 418 U.S. at 190-191, n. 9, 94 S.Ct. at 2953, n. 9 (1973) (Powell, J., concurring) (citations omitted) (quoting 2 M. Farrand, The Records of the Federal Convention of 1787 (1911)).

THE DISSENT
Any appellate judge reviewing this appeal would devoutly want to affirm. As the majority points out, however, a circuit court's authority to put a man in the penitentiary comes solely from, and is governed entirely by statute. The statute is his only authority for the time and terms of the defendant's commitment. In the absence of statute, a circuit judge simply has no authority to order a man to serve time in the penitentiary or impose the conditions of his sentence. "The imposition of a sentence is within the discretion of the trial court, and this court will not review the sentence, if it is within the limits prescribed by statute." (emphasis added) Reynolds v. State, 585 So.2d 753, 756 (Miss. 1991). See also Reed v. State, 536 So.2d 1336 (Miss. 1988), Boyington v. State, 389 So.2d 485 (Miss. 1980), Yazzie v. State, 366 So.2d 240 (Miss. 1979). A sentence beyond that authorized by statute has no more validity than a sentence imposed by any ordinary citizen. Mitchell v. State, 561 So.2d 1037, 1039 (Miss. 1990); Ard v. State, 403 So.2d 875, 876 (Miss. 1981); Hill v. State, 388 So.2d 143 (Miss. 1980); Stark v. State, 81 Miss. 397, 33 So. 175 (1903).
However laudable the result in affirming Lanier's sentence might be in this case, it would, as the majority points out, set a most unfortunate precedent.

THE MAJORITY OPINION
The only issue presented on this appeal is whether the "without parole" portion of Lanier's sentence was void, despite his assent thereto. By striking the "without parole" portion, we obviously leave in full force a valid judgment sentencing Lanier to life imprisonment. This is where the matter must remain, unless or until some affirmative action by additional pleading is taken by the State in view of our holding today. Whether it chooses or not to take further action is a decision yet to be made by the district attorney. It is not before us today. True, the Attorney General's brief concludes with the request that should we strike the "without parole" portion of Lanier's sentence, then we "remand the matter to the Circuit Court with *821 the State having the option of seeking the death sentence." State's Brief, p. 13.
We should, therefore, as the majority has done, strike the "without parole" portion of Lanier's life imprisonment sentence, and simply remand the matter to the circuit court without prejudice to the State to seek whatever relief is appropriate in view of our holding. This, at the most, is as far as we should, or can appropriately go. After today, it is the district attorney's move, not this Court's.
The majority, however, does not stop with deciding the only issue before us. Without benefit of any briefing on the question, it tells the State in advance what its rights will be on a decision yet to be made by it. "Lanier once again has the right to be sentenced by a jury[1] and the State once again has the right to seek the death penalty." Majority Opinion, p. 817.
Thus the majority informs the district attorney in advance that while he is free to choose whether or not he wishes to do so, if he does, he "once again has the right to seek the death penalty."
Moreover, the majority does not stop there. After telling the State what, if it pleases to choose, can do, and again without any briefing by either side on the question, it proceeds to tell Lanier in advance what he cannot do. In a five-page dissertation it tells Lanier why he cannot plead double jeopardy. This question has been neither raised nor hinted a by either side.
Now, if it were this Court's appellate function to guess, or to count probabilities, it might very well be that the State will want to wipe the slate clean and have a brand new sentencing hearing, and if this occurs, that Lanier at the hearing may very well want to plead double jeopardy. These, however, are contingencies requiring additional pleadings which, may or may not occur, and it strikes me as somewhat odd for the Court to be announcing in advance what the law will be, however learned the exposition.
While the State may be most grateful for the paternalism (or maternalism) shown it in this case, I respectfully suggest that it sets an unfortunate precedent. The majority would do well, in my view, to bite its judicial tongue. The State is represented by individuals capable of seeing after its interest without this Court hovering over their shoulders.
"We will not express any opinion on a case for the mere information of the parties... ." White v. Franklin, 165 Miss. 729, 140 So. 876 (1932). "We simply decide the issue as made ... What the result is, or whether the parties hereto ... can or should take further action, is not for us to say. This Court is not empowered to deliver advisory opinions." McLendon v. Laird, 211 Miss. 662, 671, 52 So.2d 497, 501 (1951). "A decision on appeal should be limited to a consideration of and ruling upon those issues necessary to a proper disposition of the appeal. A court should not ordinarily go further and express an opinion on other matters." Ex Parte Castle, 248 Miss. 159, 163, 159 So.2d 81, 83 (1963).
However well received the dissenting and majority opinions may be to the unenlightened reader, judges and lawyers will remain perplexed. What are the rules in the future to be? When will we and when will we not give advisory opinions? Ambiguities and uncertainties of this Court's making have now been placed in the judicial footpath.
SULLIVAN, J., joins this opinion.
DAN M. LEE, Presiding Justice, dissenting:
Because I cannot agree that this man who was previously convicted of capital murder is legally entitled to the option of a sentence more favorable than the sentence which he and his five attorneys bargained for with the State of Mississippi, I dissent.
*822 The case sub judice is in essence, a death penalty case which has gone through the revolving door and arrived once again.[1] This Court, in Lanier's first appeal, affirmed the jury verdict of guilt for capital murder, but reversed Lanier's jury sentence of death by lethal injection, remanding to the lower court for a new sentencing hearing. However, a second sentencing hearing was never conducted because Lanier did not want to risk a second jury sentence of death. Instead, Lanier bargained with the State and reached an agreement whereby the State promised not to pursue the death penalty against Lanier in exchange for Lanier's promise not to seek parole. The lower court judge's sentence contained the statutory life imprisonment language, but it went one step further by announcing the "without parole" effect of the plea bargain agreement embodied within the "WAIVER OF PAROLE RIGHTS".
The State fulfilled its promise and did not seek the death penalty, instead it incarcerated Lanier in the state penitentiary. Now, Lanier is not satisfied with having avoided the risk of a second jury sentence of death, nor is he satisfied with his bargain of life imprisonment without parole. He wants to breach his plea bargain agreement with the State because he wants a better deal  life imprisonment with the possibility of parole.

I.

THE PLEA BARGAIN AGREEMENT PROMOTES PUBLIC POLICY, THEREFORE IT IS NOT VOID.
The majority maintains that the plea bargain agreement represented by the "WAIVER OF PAROLE RIGHTS" contravenes public policy. On the contrary, the plea bargain agreement which protects the general public by requiring incarceration of Lanier, a convicted murderer, promotes public policy. The paramount purpose behind public policy is to protect the interests of the citizens. It is a distortion of our public policy to construe it as authorizing convicted criminals to breach their contracts at the expense of the safety and protection of the law-abiding citizens. After all, it is policy intended to protect the "public".
Nevertheless, by today's decision, the majority misinterprets public policy, opining that the "WAIVER OF PAROLE RIGHTS" is against public policy, therefore, unenforceable. While the majority recognizes that a sentencing statute enacted by our legislature is central to an analysis of the question at hand, the majority avoids confronting exactly what comprises the purpose and public policy behind that capital murder sentencing statute.
"An enactment of the legislature is said by definition to express the public policy of the state." Boardman v. United Services Auto. Ass'n, 470 So.2d 1024, 1038 (Miss. 1985). Clearly, the public policy behind enacting Mississippi's capital murder sentencing statute was the need and desire to protect Mississippi's citizenry from convicted murderers who are deemed to be dangerous to the general public  people exactly like Johnny Rufus Lanier. That policy provides for the protection of the public by incarceration of convicted murderers. However, the majority interprets public policy in the reverse, as if it were intended to protect the criminal, not the law-abiding public.
Implementation of the legislative policy of protecting the public from a person convicted of murder affords two possibilities: (1) life imprisonment; or (2) death. MISS. CODE ANN. § 97-3-21 (1972), as amended. Therefore, incarceration for life is precisely one of the methods endorsed and mandated by the legislature to ensure that the policy behind the statute is fulfilled. Further, by its own terms, the "sentencing statute" does not grant eligibility for parole.
Lanier, in his "WAIVER OF PAROLE RIGHTS", explicitly and affirmatively confessed that he could not obey the laws of this State and that society should ensure his incarceration, stating as follows:
I agree that it would not be in the best interest of society at any time for me to be released. ... I do state under oath that I would not be able to fulfill my obligations as a law abiding citizen. *823 Therefore, I have waived my rights to parole in this case.[2]
The State chose to accept Lanier's offer of life imprisonment to assure compliance with the policy of protecting the populace from him. To guarantee that Lanier would not be able to renege on his offer at a later time, thereby violating the public policy behind the sentencing statute, the State memorialized the "life imprisonment" choice of it and Lanier through an agreement  the "WAIVER OF PAROLE RIGHTS". The purpose of that contract was to enforce incarceration for life which the capital murder sentencing statute authorized and which Lanier and the State agreed upon, in lieu of a possible death penalty.
Not only does today's decision undermine the very "purpose" of the contract, the majority opinion unquestionably obstructs another long recognized public policy embodied in our Constitution  enforcement of contracts. As stated by this Court in a prior case:
The right to contract and have contracts enforced is a basic one guaranteed by the Constitutions. The function of the courts is to enforce contracts rather than enable parties to escape their obligation upon the pretext of public policy. This Court has adjudged contracts void only when the illegality is clearly shown.
Smith v. Simon, 224 So.2d 565, 566 (Miss. 1969) (emphasis added).
The majority readily admits that the plea bargain agreement possesses all the characteristics of a valid contract, yet the majority asserts that the contract should not be enforced on public policy grounds. However, the right to contract and the right to have contracts enforced, as guaranteed by our Constitution, should not be subject to application based upon individual perceptions of public policy. As astutely articulated in a prior opinion:
As a member of this Court I am not justified in writing my private notions of policy into the Constitution, no matter how deeply I may cherish them or how mischievous I may deem their disregard... . It can never be emphasized too much that one's own opinion about the wisdom or evil of a law should be excluded altogether when one is doing one's duty on the bench.
West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 647, 63 S.Ct. 1178, 1189, 87 L.Ed. 1628 (1943) (Frankfurter, J., dissenting).
Even assuming, arguendo, that the plea bargain agreement accomplishes an objective which the majority deems prohibited, realization of that purpose does not necessarily render the plea bargain agreement unenforceable. In Smith, supra, the Court announced that, "not every contract with some illegal aspect is void and unenforceable... . This Court has adjudged contracts void only when illegality is clearly shown." Smith, 224 So.2d at 566. In the case sub judice, illegality of the plea bargain agreement has not been clearly shown by Lanier, therefore, it is not void.
The laws of the State of Mississippi require its honest citizens to fulfill their contractual obligations. Hence, I cannot agree that acquiring the status of convicted murderer bestows any greater right upon a felon to breach his contract. If Lanier is allowed to breach his agreement with the State, he will gain a life sentence with the future possibility of parole. Such an outcome would allow a convicted murderer to have his cake and eat it too  a result which does not demonstrate justice.

II.

THE PLEA BARGAIN AGREEMENT.
As previously mentioned, this is Lanier's second appeal to this Court. This Court originally reversed the death penalty sentence and remanded same to the lower court for a new sentencing hearing, which was the impetus for Lanier's plea bargain agreement. Therefore, the facts underlying that lower court conviction for capital murder and his concomitant sentence of death warrant revisiting:
*824 On December 28, 1985, the Meridian, Mississippi, Police Department received an early morning domestic disturbance call from Catherine Smith. Smith informed the police that she and Johnny Rufus Lanier, her livein companion, had become involved in a dispute, and Lanier had pushed or shoved her out of the house.
In response to Smith's call, the Meridian Police Department dispatched Officer Alma Walters. Officer Walters arrived and was met by Smith who explained that Lanier had been beating her and she wanted him out of the house. Smith led Officer Walters into the house and she indicated that Lanier was in a bedroom. Lanier was awakened by Officer Walters and they proceeded outside for some fresh air. Once outside, Lanier overpowered Officer Walters and was able to get her nightstick and .357 magnum revolver. Lanier beat Walters with her own nightstick while shouting to Smith that, "I'm going to kill that bitch." Smith, understandably frightened, fled the scene and called the police to inform them that Officer Walters was in trouble. Lanier forced Officer Walters back into the house. A short time later, Officer K.D. Merchant was the first on the scene in response to the officer in distress call. While approaching the front door of the house, Officer Merchant yelled to ascertain if Officer Walters was in the house. Summoning up the courage to give up her own life for that of a fellow officer, Officer Walters replied, "[d]on't come in. He's got my gun. He's got my gun." A gunshot emanating from the house was heard immediately.
Officer Merchant called for an ambulance and for backup. Once those arrived, they entered the house and found Officer Walters' body lying face-up across a coffee table, but Lanier had escaped out the back door. Walters was examined and determined to be dead. An autopsy of Officer Walters' body and a forensic study revealed that she had died from a single "contact" gunshot wound to the head. The barrel of the gun had been placed against the skin behind her left ear and fired, causing the bullet to travel through her head and exit in front of her right ear.
Shortly thereafter, Lanier was apprehended at a roadblock. He was subsequently tried by a jury on the charge of capital murder. Upon completion of the guilt/innocence phase of the trial, the jury returned a verdict finding Lanier guilty of capital murder for the killing of Officer Walters. Afterwards, during the sentencing phase of the trial, the jury concluded, based upon the evidence before it, that Lanier's punishment should be death by lethal injection. Lanier appealed the jury's finding of guilt as well as the jury's determination that the death penalty was appropriate. On appeal, the Supreme Court of Mississippi affirmed the jury's guilty verdict, however, the case was reversed and remanded for a new sentencing hearing based upon a confrontation clause problem encountered during the original sentencing phase. Lanier v. State, 533 So.2d 473 (Miss. 1988).
On remand, only the sentence of Lanier was required to be determined anew since his conviction for capital murder was upheld on appeal. As a result, no plea bargain involving a plea to a less serious crime could be utilized by Lanier in an attempt to make a deal with the State of Mississippi which would reduce the severity of his sentence. According to MISS. CODE ANN. § 97-3-21 (1972), as amended, the sentence for every person convicted of capital murder is either: (a) death; or (b) imprisonment for life.
However, Lanier decided that he did not want to face another sentencing hearing before a jury while the possibility of the death sentence loomed overhead. Lanier, with the assistance of five attorneys, bargained with the State. The culmination of that plea bargain was an agreement by the State of Mississippi not to pursue the statutory death penalty against Lanier in exchange for the only thing remaining which Lanier could exchange  Lanier's agreement to life imprisonment and a waiver of any and all present or future rights or privileges for parole and parole application.
The document embodying the plea bargain agreement between the State and Lanier contains the following caption(s) and accompanying rights and obligations of the respective parties:

*825 WAIVER OF PAROLE RIGHTS
Personally appeared before me the undersigned authority in and for the above jurisdiction, Johnny Rufus Lanier, defendant in Cause # 24433 in the Circuit Court of Harrison County and after being duly sworn depose [sic] and says as follows:
(1) My name is Johnny Rufus Lanier, I am the defendant in the Capital Murder case of State of Mississippi versus Johnny Rufus Lanier in the Circuit Court of Harrison County, Cause # 24433.
(2) I have previously been convicted by jury of Capital Murder in this cause and am now awaiting sentencing for that crime.
(3) I have agreed with my attorney's [sic], with the State of Mississippi, and with the Court to waive any and all rights I now have or may have in the future to parole from the Mississippi Department of Corrections on the charge in Cause # 24433. The reason for the waiver is that I am agreeing to waive my rights to parole in exchange for the State agreeing to a life sentence instead of trying me and seeking the death penalty in this case.

(4) I understand and have been advised by my attorney's [sic] that under Section 47-7-17 of the Mississippi Code, I will be eligible for consideration for parole by the Parole Board after serving ten (10) years of my life sentence. However, I agree that it would not be in the best interest of society at any time for me to be released. I agree that it would be impossible for any arrangements to be made for my proper employment and care and I do state under oath that I would not be able to fulfill my obligations as a law abiding citizen. Therefore, I have waived my rights to parole in this case being fully aware of those rights and request that parole never be granted to me if and when I am reviewed for parole by the State Parole Board.
(5) I understand that under Mississippi law, I may not sue the Parole Board to require them to give me parole at any time. I waive my rights to parole with full knowledge that parole in Mississippi is not a Constitutionally protected liberty interest.
(6) I have consulted with my attorneys. I have considered my options in this case. I willingly waive all rights and privileges for parole in exchange for the sentence offered by the State of Mississippi in this case.
(7) I waive all rights to make application for parole and will not make application for parole at any time in the future on this charge.
(8) I have not been coerced or promised any other consideration except that of being allowed to have a life sentence in this case as well as consecutive thirty (30) year sentences in two (2) Lauderdale County cases which are part of the plea agreement in this case.
(9) It has been determined by Circuit Judge Robert W. Bailey, that I am competent to enter this waiver as well as to enter my pleas of guilty in the two (2) companion cases to Cause # 24433 and I and my attorney's [sic] agree that I am fully aware of what I am doing and claim no disabilities whatsoever with respect to this waiver and the plea agreements entered into as a part of this transaction.
Witness my signature this the 27th day of October, 1989.
 (signed) Johnny Rufus Lanier
 JOHNNY RUFUS LANIER
SWORN TO AND SUBSCRIBED to [sic] before me this the 27th day of October, 1989.
 (signed) Raymond P. Davis, Circuit
 Clerk
 By: Renee R. Covert, D.C.
My Commission Expires 1st Monday Jan. 1992
Witnessed by: (signed)
David A. Stephenson Clyde Smith Raymond L. Falls, Jr. John G. Hutchinson Earl P. Jordan, Jr.
The State of Mississippi accepted the plea bargain and did not pursue the death penalty against Lanier. Having accepted the plea *826 bargain, no sentencing trial was necessary. Instead, the court sentenced Lanier to life imprisonment without parole in accordance with the terms of the agreement.
Nevertheless, less than eighteen (18) months after Lanier agreed to the terms which allowed him to avoid facing the possibility of a sentence of death, he filed the appeal sub judice, claiming that the lower court sentence of life imprisonment without parole was illegal and that the "WAIVER OF PAROLE RIGHTS" was not valid. In other words, now that Lanier has benefitted from the State's fulfillment of its contractual obligation, whereby the State refrained from exercising its right to seek the death penalty against him, Lanier now desires to renege on his obligations under the agreement by attempting to regain the possibility of eligibility for parole.

III.

THE "WAIVER OF PAROLE RIGHTS" IS A VALID ENFORCEABLE CONTRACT.
The agreement incorporated within the "WAIVER OF PAROLE RIGHTS" possesses the traits of most plea bargain agreements. Plea bargain agreements between the State of Mississippi and persons arrested for crimes are negotiated and consummated regularly. Further, those agreements are enforceable as contracts. In recognizing the fact that such agreements are analyzed as contracts, we have previously discussed the contractual qualities of a plea bargain. This Court has recently stated that, "[t]he implicit premise ... is that an agreement such as that made by the prosecution and the defendant is enforceable. This premise has ripened into unmistakable law in the context of plea bargaining. There we rely upon a contract model." Wright v. McAdory, 536 So.2d 897, 901 (Miss. 1988), (citing Moore v. State, 242 So.2d 414 (Miss. 1970)).

A. All essential elements of a contract are present.
The agreement of the parties embraced within the "WAIVER OF PAROLE RIGHTS" includes all the essential elements necessary for the formation of a valid contract. That plea bargain agreement includes: (1) two or more contracting parties; (2) consideration; (3) an agreement that is sufficiently definite; (4) parties with the legal capacity to make a contract; (5) mutual assent; and (6) no legal prohibition precluding contract formation. These elements are briefly considered infra.
PARTIES: In the third paragraph of the "WAIVER OF PAROLE", Lanier states under oath that he, as promisor, is agreeing with his attorneys, the State of Mississippi, and the Court as promisees.
CONSIDERATION: Paragraph number three of the "WAIVER OF PAROLE" declares that the consideration given by the State to Lanier is the State's agreement to forebear seeking the death penalty against Lanier. Paragraphs number three, six, and seven state that the consideration given by Lanier in exchange for the State's consideration is: (a) a waiver of any and all present or future rights to parole; (b) waiver of all privileges for parole; and (c) waiver of all rights to make application for parole at any time in the future.
DEFINITENESS: The terms of the agreement are not ambiguous. In paragraph number four, Lanier plainly declares that he has been advised of his future eligibility for parole pursuant to MISS. CODE ANN. § 47-7-17 (1972), as amended, by which he would be eligible for parole after serving ten years of his sentence of life imprisonment. It is abundantly clear throughout the text of the contract that Lanier is exchanging that future parole eligibility for the promise by the State not to seek the death penalty.
CAPACITY TO CONTRACT: Without digressing into the authority to contract, let it suffice to say that the State of Mississippi enters into numerous plea bargain agreements on a daily basis. Paragraph number nine of the plea bargain agreement relates the fact that Lanier has been found competent to enter into the waiver by Circuit Judge Robert W. Bailey. Further, although some of the rights of a person are terminated upon conviction of a felony, the power to contract is not one of them. Lanier's status as a convict at the time of entering into the *827 contract does not mean that he did not have the legal capacity to contract. As previously stated by this Court, "[p]ersons who have been convicted of crimes do not shed all of their legal rights at the jailhouse door." McFadden v. State, 542 So.2d 871, 875 (Miss. 1989).
MUTUAL ASSENT: Lanier and the State of Mississippi both expressed commitments to each other to act or refrain from acting in a certain way in the future, therefore, they have expressed their mutual assent concerning such actions.
LEGALITY OF FORMATION: Since Lanier had already been convicted, and that conviction was upheld on appeal, Lanier v. State, 533 So.2d 473 (Miss. 1988), when he bargained with the State, the only thing of any value which Lanier could exchange with the State was his potential future freedom from imprisonment which might be obtained through application for parole. In exchange for Lanier's promise not to make an application for parole in the future, the State of Mississippi agreed to forebear exercising its right to seek the death penalty and to settle for a punishment of life imprisonment without parole. Put another way, the subject matter of the consideration offered by Lanier was his right to apply for parole in the future and any parole which could result therefrom. Although not expressly provided by statute, inasmuch as the right to apply for parole belongs to the individual, it may be used in any way not expressly prohibited by law, including waiver by plea bargain agreement. Since there is no explicit prohibition against making an agreement with a convict concerning his right to apply for parole, the "WAIVER OF PAROLE RIGHTS" is a valid plea bargain agreement in which Lanier voluntarily supplemented or enhanced his sentence of life imprisonment.

B. Parole is permissive, not mandatory, therefore, it is not a statutory right.
Although the ability to "apply" for parole implicitly appears as a right conferred by statute, the statute which grants potential eligibility for parole clearly provides that parole itself is permissive, not mandatory. That statute states that, "[e]very prisoner who has been or may hereafter be convicted of any offense ... may be released on parole as hereinafter provided... ." MISS. CODE ANN. § 47-7-3 (1972), as amended (emphasis added).
While not explicitly stated, it is obvious that before the State Parole Board will consider parole for an inmate, that inmate is required to submit an application for parole to the State Parole Board. This conclusion is drawn from a reading of the statute which states in part, "the board shall secure and consider all pertinent information regarding each offender, except any under sentence of death or otherwise ineligible for parole... . Before ruling on the application for parole. ..." MISS. CODE ANN. § 47-7-17 (1972), as amended (emphasis added). Consequently, a right to apply for parole may exist, however, the consideration and granting of parole is clearly permissive and discretionary on the part of the State Parole Board. Nevertheless, in paragraphs six and seven of the "WAIVER OF PAROLE RIGHTS", Lanier waived any privilege or right of future parole, as well as the right to make application for parole.

C. Parole eligibility was anticipatorily waived by contract.
This point is a basic tenet of contract law. Contracts can establish duties and rights to be performed and received in the future. Such obligations can be in the form of an act to be performed in the future, refraining from performing a future act, or the surrender of a known right.
As discussed supra, the waiver of the right to make an application for parole was the primary consideration given by Lanier in exchange for the State's promise not to pursue the death penalty. These rights or privileges were explicitly stated in paragraphs three, four, six, and seven of the "WAIVER OF PAROLE RIGHTS" as rights of which Lanier was aware and with which he wished to bargain. Lanier surrendered a known right to perform an act in the future which was provided to him by statute  the right to "apply" for parole. A fortiori, parole eligibility was effectively waived since parole will not be considered without an application *828 from the offender. MISS. CODE ANN. § 47-7-17 (1972), as amended.

D. The State has detrimentally relied on Lanier's representations in the "WAIVER OF PAROLE", therefore, Lanier should be estopped from refusing to perform his obligations.
The sentence of the lower court and the punishment underlying the plea bargain agreement contained within the "WAIVER OF PAROLE RIGHTS" are separate. The State of Mississippi has detrimentally relied upon that plea bargain agreement and the representations of Lanier by refraining from the exercise of its right to seek the death penalty. Consequently, Lanier benefitted from the State's action. Yet, this Court appears willing to allow Lanier to keep the benefit of his bargain, his life, while simultaneously requiring the State of Mississippi to stand silent as Lanier repudiates his contract by obtaining parole eligibility. That action would deprive the State of Mississippi of the benefit of its bargain  assurance that this convicted murderer, who stated under oath that he "would not be able to fulfill [his] obligations as a law-abiding citizen", will not be a threat to its residents.

E. Sentencing and parole are separate and distinct.
The State Parole Board is an administrative entity of the executive branch of the State which was created by statute. The functions of the State Parole Board are executive and administrative in nature. It is charged with the exclusive responsibility for determining and administering parole. MISS. CODE ANN. § 47-7-5 (1972), as amended. Therefore, it is the State which determines the propriety of, and regulation of, the parole of convicted felons.
According to this Court, sentencing authority is separate from the State Parole Board's function of determining parole. In discussing the sentencing and parole statutes regarding a robbery, this Court previously stated that:
The sentencing and the parole chapters are separate and distinct. ... Sentencing authority is provided for under § 97-3-79 and not § 47-7-3. The granting of parole or denial of parole, under § 47-7-3 is the exclusive responsibility of the state parole board, which is independent of the circuit court's sentencing authority.

Mitchell v. State, 561 So.2d 1037, 1039 (Miss. 1990) (emphasis added).
Regardless of any effect the lower court's "sentence" may have on Lanier's length of incarceration, this Court should not interfere with that contractual arrangement which may well affect parole. Indeed, whether to hold Lanier to his contractual waiver of parole eligibility is a proper consideration for the State Parole Board, when, and if, Lanier applies for parole.

IV.

THE LOWER COURT'S ORDER OF LIFE IMPRISONMENT WITHOUT PAROLE IS A LEGAL SENTENCE BECAUSE PUNISHMENT AND SENTENCING IN STRICT CONFORMITY WITH §§ 97-3-21 AND XX-XX-XXX WERE WAIVED.
Many jurisdictions across this country enforce punishment negotiated through plea bargain agreements, regardless of whether those sentences are expressly provided by statute. The touchstone utilized by those jurisdictions which enforce such sentences appears to be whether or not the punishment was negotiated knowingly, intelligently, and voluntarily by the defendant. Lanier satisfies those criteria. Parole is a privilege, not a right, but that privilege is not absolute, and Lanier waived that privilege. There were five (5) attorneys assisting and advising Lanier concerning the desirability of his "WAIVER OF PAROLE RIGHTS".
Since the State had waived its right to seek the death penalty against Lanier in the "WAIVER OF PAROLE RIGHTS", life imprisonment was the only sentence available to which Lanier could be sentenced according to statute. The sentence imposed upon Lanier by the lower court did no more than announce the aggregate effect of the negotiated post-conviction "no parole" plea bargain agreement and the only statutory sentence *829 remaining. The statutory sentence of life imprisonment and the plea bargain agreement are both legal when analyzed separately. No logical reason exists why the consolidated effect is not just as legal.
The statute which establishes the sentence for a person convicted of capital murder is silent as to whether or not the sentence of life imprisonment is to be with, or without, parole. That statute reads as follows:
Homicide  penalty for murder or capital murder.
Every person who shall be convicted of murder shall be sentenced by the court to imprisonment for life in the state penitentiary.
Every person who shall be convicted of capital murder shall be sentenced to death or to imprisonment for life in the state penitentiary.
MISS. CODE ANN. § 97-3-21 (1972) (emphasis added).
It is important to note that MISS. CODE ANN. § 97-3-21 (1972), as amended, specifically authorizes sentences of "death" or "life imprisonment." The statute does not require life imprisonment with "the possibility of parole". Thus, the sentence of life imprisonment is fully authorized by statute, and the right to apply for the privilege of parole is totally independent of the authority of the court to sentence a person to life imprisonment.
Most privileges which citizens possess may be waived. This is true even of the exalted rights guaranteed by the United States Constitution. For example, it is not uncommon for defendants to waive the right to trial by a jury, the right to counsel, the right to a speedy trial, or the right against self-incrimination. Since the revered rights contained within the Bill of Rights, which we all cherish and value, may legally be waived, it is a fortiori that the privilege of parole eligibility established by Mississippi statute may also be waived. Further, if a privilege may be waived, surely it could form the basis of a plea bargain by which Lanier exchanged the privilege of parole eligibility for the State's agreement to refrain from seeking the death penalty against Lanier.
As a consequence, whether Lanier waived a privilege, a statutory right, or a constitutional right, the subject matter of the consideration promised by Lanier, and upon which the State detrimentally relied, formed a legally proper basis for the bargain embodied within the "WAIVER OF PAROLE RIGHTS".

V.

CONCLUSION.
The statutory life imprisonment language was contained within the lower court's sentence. However, that sentence also declared the effect of the plea bargain agreement embodied within the "WAIVER OF PAROLE RIGHTS" in which Lanier voluntarily, knowingly, and intelligently waived a known privilege with the advice and assistance of five attorneys. In reliance on that plea bargain, the State agreed to incarcerate Lanier in the state penitentiary and to abstain from exercising its right to seek the death penalty. Lanier now seeks to breach his plea bargained contract with the State.
The punishment to which Lanier agreed was not as severe as the death penalty which he sought to avoid, but it was more severe than life imprisonment with the possibility of parole. The State has detrimentally relied upon the plea bargain because it discharged its obligation under the contract with Lanier by refraining from exercising its right to pursue the death penalty against him. Lanier has benefitted from the State's actions which were predicated upon his representations contained in the plea bargain agreement, and he now seeks to renege on that plea bargain in an effort to gain eligibility for parole after serving ten (10) years of his sentence. With credit for jail time, Lanier could be eligible for parole under this sentence in 1995.
Accordingly, this Court should acknowledge the plea bargain between Lanier and the State of Mississippi by affirming the lower court's sentence of life imprisonment without parole.
McRAE and JAMES L. ROBERTS, Jr., JJ., join this opinion.
*830 McRAE, Justice, dissenting:
If a criminal defendant can waive his constitutional right against self-incrimination, the right to counsel or the right to a trial by jury, then surely he should be able to waive the non-constitutional right to refuse to seek parole. I disagree with the majority opinion which holds that a criminal defendant cannot agree to waive his right to seek parole in lieu of going to trial a second time, thereby risking another death penalty imposition. The statute which imposes penalties for capital murder allows for either the death penalty or life imprisonment; it does not allow for life with the possibility of parole. Life imprisonment should literally mean life imprisonment with the parole board having the option of granting parole. It appears the majority, in effect, now holds that every applicable offender has a right to parole. The "no parole" provision in the sentence imposed upon Lanier for his capital murder conviction is valid and should be binding on Lanier since he specifically requested, agreed to and asked the lower court to enact. Accordingly, I dissent.
I agree with Presiding Justice Lee's dissent in that the waiver agreement was a plea bargain contract which should be upheld. The agreement met all the necessary elements of a contract which the majority admits. The majority, in one undiscerning paragraph, merely states that the parole waiver is void as against public policy without citing any applicable authority. (See page 816 of the majority opinion.) To support its position that the contract is void as against public policy, the majority later cites only one case; however, this case is misplaced as it is a domestic case involving a "Mary Carter" agreement, an agreement contrary and opposite to the original agreement presented and approved by the court. Unlike the case at hand, where Lanier requested that the court approve the plea bargain contract, the "Mary Carter" agreement was never presented to the court.
The majority admits that Lanier's waiver of parole rights was entered voluntarily, knowingly and on the advice of five attorneys. This Court has repeatedly held that a criminal defendant can waive his privilege against self-incrimination, the right to confront and cross-examine the State's witnesses, the right to a trial by a jury and the right that the State prove every element of the charged crime beyond a reasonable doubt. See Anderson v. State, 577 So.2d 390, 391 (Miss. 1991); Jefferson v. State, 556 So.2d 1016, 1019 (Miss. 1989); Thomas v. State, 472 So.2d 425, 426 (Miss. 1985); Houston v. State, 461 So.2d 720, 724 (Miss. 1984); Sanders v. State, 440 So.2d 278, 283 (Miss. 1983); Phillips v. State, 421 So.2d 476, 479-83 (Miss. 1982); Wood v. State, 354 So.2d 1122, 1124 (Miss. 1978); Alexander v. State, 226 So.2d 905, 909 (Miss. 1969).
No distinction can be drawn from a parole waiver and the above waivers, except the waivers set out above concern a defendant's constitutional rights. Moreover, as supportive proof that Lanier's waiver was valid, the right to seek parole is not a constitutionally protected liberty interest. Harden v. State, 547 So.2d 1150, 1152 (Miss. 1989). In Harden, this Court discussed whether parole is a constitutional right and stated:
The United States Court of Appeals for the Fifth Circuit has recently considered the point in Scales v. Mississippi State Parole Board, 831 F.2d 565, 566 (5th Cir.1987) and there stated:
The distinction between whether a prisoner shall or may be given parole critically differentiates his expectation of release, and hence his rights under the due process clause of the Fourteenth Amendment. In Mississippi, the absolute discretion conferred on the parole board affords a prisoner no constitutionally recognized liberty interest.

Scales, 831 F.2d at 566; see also Irving v. Thigpen, 732 F.2d 1215, 1217-18 (5th Cir.1984). We agree.
Harden, 547 So.2d at 1152.
There is no apparent reason this Court should not hold that Lanier waived his right to seek parole. Since one now cannot waive a non-constitutional right, is the majority in effect holding that a defendant cannot waive his constitutional rights? Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and its progeny of cases commands an *831 "intentional relinquishment or abandonment of a known right or privilege." Johnson, 304 U.S. at 464, 58 S.Ct. at 1023. The State more than satisfied the requirements set forth in Johnson as the record reveals that Lanier waived his right to seek parole by his own sworn statement which states in pertinent part:
(3) I have agreed with my attorney's [sic], with the State of Mississippi, and with the Court to waive any and all rights I now have or may have in the future to parole from the Mississippi Department of Corrections on the charge in Cause # 24433. The reason for the waiver is that I am agreeing to waive my rights to parole in exchange for the State agreeing to a life sentence instead of trying me and seeking the death penalty in this case.
(4) I understand and have been advised by my attorneys that under Section 47-7-17 of the Mississippi Code, I will be eligible for consideration for parole by the Parole Board after serving ten (10) years of my life sentence. However, I agree that it would not be in the best interest of society at any time for me to be released. I agree that it would be impossible for any arrangements to be made for my proper employment or maintenance and care and I do state under oath that I would not be able to fulfill my obligations as a law abiding citizen. Therefore, I have waived my rights to parole in this case being fully aware of those rights and request that parole never be granted to me if and when I am reviewed for parole by the State Parole Board.
(5) I understand that under the Mississippi Law, I may not sue the Parole Board to require them to give me parole at any time. I waive my rights to parole with full knowledge that parole in Mississippi is not a Constitutionally protected liberty interest.

(6) I have consulted with my attorneys. I have considered my options in this case. I willingly waive all rights and privileges for parole in exchange for the sentence offered by the State of Mississippi in this case.
(7) I waive all rights to make application for parole and will not make application for parole at any time in the future on this charge.
(8) I have not been coerced or promised any other consideration except that of being allowed to have a life sentence in this case as well as consecutive thirty (30) year sentences in two (2) Lauderdale County cases which are part of the plea agreement in this case.
(9) It has been determined by Circuit Judge Robert W. Bailey, that I am competent to enter this waiver as well as to enter my pleas of guilty in the two (2) companion cases to Cause # 24433 and I and my attorneys agree that I am fully aware of what I am doing and claim no disabilities whatsoever with respect to this waiver and the plea agreements entered into as a part of this transaction.

The majority states that the sentence imposed upon Lanier, life imprisonment without parole, is not authorized by law since he has not been adjudged an habitual offender pursuant to Miss. Code Ann. §§ 99-19-81, 99-19-83 (Supp. 1993). To the contrary, the sentence dictated to Lanier is within the statute which imposes penalties for murder. Mississippi Code Ann. § 97-3-21 (Supp. 1993) provides:
Every person who shall be convicted of murder shall be sentenced by the court to imprisonment for life in the state penitentiary.
Every person who shall be convicted of capital murder shall be sentenced to death or to imprisonment for life in the state penitentiary.
The statute clearly states that a criminal defendant who has been convicted of capital murder can be sentenced either to life imprisonment or death. There is no provision for parole in the statute, and it is not a given right. The fact that Miss. Code Ann. §§ 99-19-81, 99-19-83 (Supp. 1993) furnishes the sentence of life imprisonment without parole to habitual criminals is not all inclusive, thus limiting the sentence to only those determined to be habitual criminals. Miss. Code Ann. § 97-3-21 (Supp. 1993) specifically provides for a sentence of life imprisonment, *832 and, since the language is unambiguous, no other meaning should be construed.
In Mississippi Power Company v. Jones, 369 So.2d 1381 (Miss. 1979), we stated that "[w]here the language used by the legislature in a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion to resort to rules of statutory interpretation." Jones, 369 So.2d at 1388. There is no provision for "life imprisonment with the possibility of parole," and, therefore, a sentence of life imprisonment is indeed fully within the statute's authorization.
The majority is simply not enforcing what we are mandatorily required by legislation to enforce, i.e., to give a sentence of life. All criminal defendants who are sentenced to life, after serving a period of their sentences, may or may not apply for parole. After the criminals apply for parole, they may or may not be paroled. Paroling a criminal defendant is a decision of the executive branch, however, imposing a sentence within the framework of the applicable statute is a judicial duty. Lanier agreed in his waiver that he would not seek parole. The parole board itself is not precluded from instituting a proceeding to determine if an offender is eligible for parole. The Board may, sua sponte, examine an offender regardless of the fact that the offender promised he would not seek parole.
The majority bases its decision that such a waiver is void as against public policy on the domestic case of Gregg v. Montgomery, 587 So.2d 928 (Miss. 1991). Upon examination, Gregg is not applicable authority for the case sub judice. In Gregg, an ex-husband and wife entered into a private alimony modification which was totally opposite to the original provision presented to the court under oath. Gregg, 587 So.2d at 931. This private contract was never presented to the chancellor, and we stated:
We held in Sullivan v. Pouncey, 469 So.2d 1233, 1234 (Miss. 1985), that a separate contract entered into between parties which is not incorporated into the final divorce decree is void. It would be tantamount to defrauding the court for parties to present to the court a property settlement agreement incorporated into the final decree, while actually intending to abide by a contradictory, private contract. This is clearly against public policy.
Gregg, 587 So.2d at 933. Indeed, the private contract was void, and the original contract presented to the court was valid. The facts of Gregg and the case at hand can easily be distinguished in that the lower court in Gregg knew nothing about the private agreement, and in the case sub judice, Lanier fully informed the court that he would not seek parole. Gregg is misplaced as authority for the majority's position and, in fact, is support for the trial court's actions because the court had a right to reject or accept the presented contract. The trial court held the plea bargain provision to be valid, and this Court should affirm the lower court's decision.
The trial judge in the case sub judice meticulously examined Lanier to determine if Lanier's waiver was knowingly, voluntarily and intelligently entered. Lanier was advised to accept this waiver by five eminently qualified attorneys, three of whom specialized in capital murder defense. The majority now accepts Lanier's argument that he did not understand the agreement. It is readily apparent from the record that Lanier fully understood the agreement which he was entering.
The majority addresses another issue, not raised by the parties, dealing with the attachment of double jeopardy. Obviously, the majority is concerned, as is this writer, whether double jeopardy attached. Instead of bringing this case to a conclusion, the majority decision will, in all probability, send the case into the federal court system for a number of years until this issue is resolved.
The majority decision upholds Lanier's breach of his plea bargain contract with the State. The sentence imposed upon Lanier is within the pertinent statute, and he voluntarily, knowingly and intelligently waived his right to seek parole. Lanier was fully examined by the lower court and had the assistance of five attorneys to make his decision. The majority falls into Lanier's play on words trap as it holds that the sentence of life imprisonment without parole is not authorized *833 by the pertinent statute. Accordingly, I dissent.
DAN M. LEE, P.J., and JAMES L. ROBERTS, Jr., J., join this opinion.
NOTES
[1] Earl Jordan, Jr. and David Stephenson of Meridian, Mississippi; Clyde Stafford Smith of Atlanta, Georgia; and Raymond L. Falls, Jr. and John Hutchinson, both of New York, New York.
[2] Even had the prosecutor allowed the judge to sentence Lanier to life imprisonment, while intending to abide by a contradictory contract with Lanier (life without parole), "[i]t would be tantamount to defrauding the court ... [and] clearly against public policy." Gregg v. Montgomery, 587 So.2d 928, 933 (Miss. 1991).
[3] This initial sentencing distinguishes the case sub judice from Trotter v. State, 554 So.2d 313 (Miss. 1989). Resentencing of Lanier at this point constitutes no violation of his right to a speedy trial.
[4] In Rumsey the Court found the Arizona capital sentencing hearing resembles a trial for double jeopardy purposes. The sentence imposed as a result of such hearing is a judgment "like the sentence at issue in Bullington v. Missouri, which this Court held triggers the protections of the Double Jeopardy Clause." Rumsey, 467 U.S. at 210, 104 S.Ct. at 2309.
[5] The Rumsey Court noted that even if based on a legal error, an acquittal "on the merits" would prevent retrial wherein the State could seek the death penalty. Rumsey, 467 U.S. at 211, 104 S.Ct. at 2310.
[6] The Arizona sentencing procedure at issue in Poland was the same as that at issue in Rumsey. Poland, 476 U.S. at 153, 106 S.Ct. at 1754.
[7] As previously discussed, Lanier has never been acquitted of the death penalty. Remand for resentencing will not subject Lanier to reprosecution on the question of his guilt on the charge of capital murder.
[8] We note that the instant case differs from In re Bradley, 318 U.S. 50, 63 S.Ct. 470, 87 L.Ed. 608 (1943), in that Lanier has not already satisfied one of two alternate sentences, which would require that he be free from any further punishment.
[1] The majority's statement that "Lanier once again has the right to be sentenced by a jury" is somewhat muddled. Where does he get any "right" to a resentencing hearing? When the majority removes the "without parole" from his sentence, all impediments to the judgment, insofar as Lanier is concerned, have been removed. He will have been given all the relief he asked for. The majority need not worry, however. The "right" given Lanier is superfluous because he can gain nothing from a resentencing hearing. The least the jury can give him is life imprisonment, a sentence he already has.
[1] See Lanier v. State, 533 So.2d 473 (Miss. 1988).
[2] See "WAIVER OF PAROLE RIGHTS", copied infra.