ROBERTS, J.,
concurring in part and in the result:
¶ 19. I concur with the majority’s resolution of Aranyos’s claim that he received ineffective assistance of counsel. Furthermore, I concur with the majority’s result regarding Aranyos’s claim that he was illegally sentenced as a habitual offender. I write separately to express my reasoning regarding why the circuit court correctly dismissed Aranyos’s illegal-sentence claim.
¶ 20. At issue is whether Aranyos was illegally sentencéd as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev.2007). During Christmas 2006, Aranyos was the manager of a Circle K convenience store in Southaven, Mississippi. Aranyos embezzled approximately $33,000 and attempted to evade capture. However, he was later arrested and indicted for one count of embezzlement. The prosecution later moved to amend the indictment to charge Aranyos as a habitual offender under section 99-19-81.
¶21. The prosecution presented documentary evidence that in 1983, Aranyos had been convicted of burglary in Pennsylvania related to Aranyos having broken into a Wendy’s restaurant and stolen $5,500 from a floor safe. Attached to the prosecution’s motion to amend the indictment were Pennsylvania court documents that indicated that Aranyos had also pled guilty to what was characterized as a third-class felony of “theft by unlawful taking.” For Aranyos’s burglary conviction, the Pennsylvania court had suspended his sentence and placed him on probation for five years, to run consecutively to his sentence for “theft by unlawful taking.” And for “theft by unlawful taking,” the Pennsylvania court sentenced Aranyos to imprisonment for a term between eleven and one-half months and twenty-three months. The record does not indicate whether Ar-anyos actually served at least one year for his conviction for “theft by unlawful taking.”
¶ 22. Additionally, the prosecution demonstrated that Aranyos had a 1991 Ohio conviction for bank robbery in Ohio. Aran-yos’s sentence for bank robbery is much clearer than his earlier sentence for “theft by unlawful taking.” For bank robbery, Aranyos was sentenced to thirty-seven to forty-six months in federal prison.
¶ 23. On September 24, 2009, Aranyos went before the DeSoto County Circuit Court to plead guilty to embezzlement. When specifically questioned by the circuit judge, neither Aranyos nor his counsel objected to the prosecution’s request to amend the indictment to charge Aranyos as a habitual offender. Likewise, Aranyos *123 did not object to the documents that supported that amendment.
¶24. It is clear that Aranyos pled guilty to embezzlement based on a plea recommendation or plea bargain from the prosecution. The following exchanges appear in the record:
Q. By submitting this petition, you’re asking to enter a plea of guilty to the only count in the indictment, as amended, that being embezzlement as a[s]ection 99-19-81 habitual offender; is that correct?
A. (By the Defendant Aranyos) Yes, Your Honor.
Q. Do [you] understand a negotiated plea means the District Attorney, your attorney[,] and you have reached an agreement as to a recommendation to be made to this Court on your sentence? Do you understand that? A. Yes, sir.
BY THE COURT: It looks like on Mr. Aranyos the recommendation is five, to serve, five post-release, fines, costs, and assessments. Is that the State’s understanding?
BY [THE PROSECUTION]: Yes, Your Honor....
Q. I note everything else to be — I’ll note, first of all, your sentence will be ten years in the Mississippi Department of Corrections as a[s]ection 99-19-81 habitual offender to be served five years [of] incarceration, five years [of] post-release supervision, reporting required, $1,000 fine and court costs, $665 transportation fee, $32,653.74 to Circle K as restitution. All of that will be payable per the attachment that the DA is going to submit that she has just read into the record. Credit for 85 days time [for] served. All terms and conditions of the Written Sentencing Order, [p]ost-[r]elease [supervision being incorporated into this sentence by reference.
BY THE COURT: Anything further from the State?
BY [THE PROSECUTION]: No, Your Honor.
BY THE COURT: Anything further, [defense counsel]?
BY [DEFENSE COUNSEL]: No, Your Honor.
Q. Mr. Aranyos, do you need me to explain any of this to you?
A. (By the Defendant Aranyos) No, Your Honor.
Q. Do you understand if you violate this order, you’ll be brought back before this court in front of a judge, not a jury, and if it’s deemed you have violated, you can be sentenced to the remaining five years in prison?
A. (By the Defendant Aranyos) Yes, Your Honor.
Q. Do you understand that whatever you’re sentenced to it will be as a 99-19-81 habitual offender?
A. (By the Defendant Aranyos) Yes, Your Honor.
Q. Do you have any questions about any of that?
A. (By the Defendant Aranyos) No, Your Honor.
BY THE COURT: That will be the order of the Court.
¶ 25. The circuit judge clearly informed Aranyos that he was sentenced as a habitual offender to ten years in the custody of the MDOC, with five years to be served followed by five years of post-release supervision (PRS) under Mississippi Code Annotated section 47-7-34 (Rev.2011). After discharge from his initial five-year sen *124 tence, if Aranyos violated the conditions of his PRS, the circuit court could revoke Aranyos’s suspended sentence and sentence him to the remaining five years as a habitual offender.
¶26. Dissatisfied with his plea agreement and his sentence as a habitual offender, one year after Aranyos pled guilty, he filed his motion for post-conviction relief (PCR). Aranyos claimed that he did not plead guilty intelligently, knowingly, and voluntarily. Aranyos also claimed that his sentence was illegal. Finally, Ar-anyos claimed he had received ineffective assistance of counsel. The circuit court denied Aranyos’s PCR motion. On appeal, Aranyos reiterates the claims he raised in his PCR motion.
¶27. If Aranyos had claimed that he received an illegal sentence based on the concept that the circuit judge lacked authority to suspend part of Aranyos’s ten-year sentence as a habitual offender and place him on PRS, I would have agreed with him. The Mississippi Legislature has mandated that a convicted felon who qualifies for enhanced sentencing as a habitual offender under section 99-19-81 “shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.” [2] When the prosecution offers an accused felon a plea bargain that includes a sentence that is not authorized by law, and a circuit court sen-fences the accused consistent with the plea bargain, it is appropriate to allow him to withdraw that guilty plea and remand his case to the trial court’s docket for trial or another appropriate disposition. Lanier v. State, 635 So.2d 813, 816-17 (Miss.1994) (overruled on other grounds by Twillie v. State, 892 So.2d 187, 190 (¶ 11) (Miss.2004)).
¶ 28. Not surprisingly, Aranyos is careful to claim that his sentence is illegal only in that there was inadequate proof that his prior convictions met the parameters of section 99-19-81. Aranyos seeks resen-tencing to the same sentence, less the habitual-offender status. To be specific, Aranyos claims:
Petitioner does not challenge the length of sentence, nor the terms of probation attached; only the sentencing as [a] habitual offender under [section] 99-19-81. Since the [S]tate also violated the statute by imposing a term of probation on a[ ] habitual sentence, [Petitioner could also ask that the habitual portion be vacated on that reason as well, as the imposition of a term of suspension, reduced [sentence,] or ... probation is not allowed under [section] 99-19-81. This could also be cited as grounds for an illegal sentence. But Petitioner would not insult this Court by knowing that he received a favorable sentence, and then try to claim that as a ground for vacating his sentence. Petitioner, again, is *125 only asking for removal of the “habitual[-]offender” status due to the procedural errors and the use of convictions that clearly did not meet the statutory requirements under [section] 99-19-81. Petitioner feels the five ... years to serve[ ] and five ... years of probation [are] more than fair for a charge of embezzlement.
And in his request for relief, Aranyos stated:
Wherefore!,] for premises considered, the Petitioner respectfully requests that th[is] Court ... vacate the sentence complained of insofar as the Court purports to impose said sentence “as a[] habitual offender,” as the sentence complained of is illegal.... Petitioner is not arguing the substance of the crime of which he was charged, but only the habitual portion of the sentence. Petitioner asks that this Honorable Court will vacate the habitual portion of this sentence and re[ feentence as other than a[ ] habitual offender. Petitioner argues that his five[-]year sentence and his five years of probation [are] a reasonable sentence for embezzlement.
Clearly, Aranyos has not claimed that his sentence is illegal based on the circuit court’s failure to sentence him to the maximum permissible term for embezzlement or the circuit court’s partial suspension of his sentence and its imposition of a term of post-release supervision.
¶ 29. After careful review of the record, I conclude that Aranyos’s status as a habitual offender under section 99-19-81 is hopelessly ambiguous. If Aranyos served one year of his Pennsylvania sentences, he may well have been eligible for a life sentence under Mississippi Code Annotated section 99-19-83 (Rev.2007). In any event, it was Aranyos’s burden to prove by a preponderance or greater weight of the credible evidence that his sentence was in violation of Mississippi law or that his guilty plea was involuntary. Miss.Code Ann. § 99-39-23(7) (Supp.2012). Yet, as the majority properly quotes from the plea colloquy, while he was under oath, Aranyos twice swore that his prior convictions qualified him for enhanced sentencing as a habitual offender under section 99-19-81. “Great weight is given to statements made under oath and in open court during sentencing.” Gable v. State, 748 So.2d 703, 706 (¶ 11) (Miss.1999). Under such circumstances, I would not allow Aranyos to attempt to repudiate the very words from his own mouth. Accordingly, I concur with the majority’s decision to affirm the circuit court’s denial of Aranyos’s PCR motion.
GRIFFIS, P.J., JOINS THIS OPINION. FAIR, J„ JOINS THIS OPINION IN PART.

. I recognize that the record includes an order entered sua sponte by the circuit judge almost seventeen months after Aranyos pled guilty. Within that order, the circuit judge attempted to perform a constitutional proportionality analysis to justify Aranyos’s sentence. I have been unable to discover any authority that would allow a circuit court to consider such factors as the strength or weakness of the prosecution’s case, a desire to fashion a sentence that would allow potential financial payment to the victim, or the prosecution and the defendant's agreement on a proposed sentence as valid considerations for an Eighth Amendment claim that a mandatory sentence is "cruel and unusual." To the contrary, a ten-year mandatory sentence for a fifty-three-year-old defendant who has been convicted of embezzling approximately $33,000, with prior convictions for bank robbery, burglary, and the equivalent of grand larceny, clearly cannot be classified as constitutionally disproportionate.