LEE, P.J.,
for the Court.
PROCEDURAL HISTORY
¶ 1. On January 17, 2007, a jury in the Panola County Circuit Court found Marco Terrell Lamar guilty of Count I, aggravated assault with a deadly weapon, and *366 Count II, possession of a controlled substance. Lamar was sentenced as a habitual offender to serve twenty years in the custody of the Mississippi Department of Corrections for Count I and sentenced to six years’ post-release supervision for Count II. The sentence for Count II was to run consecutively to the sentence imposed for Count I. Lamar filed post-trial motions, which were denied. Lamar now appeals, asserting the following issues: (1) the trial court erred in denying his motion for a new trial or, in the alternative, for a judgment notwithstanding the verdict; (2) his trial counsel was ineffective; (3) the trial court erred in allowing the State to introduce certain evidence into the record; (4) the trial court erred in refusing his proposed jury instruction D^i; (5) the trial court erred in failing to issue a cautionary instruction to the jury regarding the testimony of co-conspirators; and (6) the cumulative effect of all the errors requires reversal. Finding no error, we affirm.
FACTS
¶ 2. Eramus Spears, Demarquese Bled-soe, and Alton Key were returning from Memphis, Tennessee on June 30, 2006, and agreed to meet Lamar in the parking lot of the Wal-Mart shopping center in Bates-ville, Mississippi. Key had called Lamar to set up the meeting. Upon their arrival at the parking lot, Spears and Bledsoe got into Lamar’s car in order to purchase ten dollars worth of marijuana from Lamar. While in Lamar’s car, the three men smoked some marijuana. Spears testified that after he and Bledsoe exited Lamar’s car, Bledsoe was carrying a large bag. Bledsoe testified that while he was sitting in the back of Lamar’s car, he saw a large bag of marijuana on the floor. Bledsoe testified that he decided to steal the bag from Lamar and grabbed it when he and Spears exited the car. Bledsoe did not remit payment to Lamar for the bag of marijuana. Spears testified that after he saw Bledsoe with the bag of marijuana, he saw Lamar leaning from the driver’s side window holding a gun. Lamar fired his gun multiple times. Spears was shot in the leg and wrist, and his cell phone was also hit by a bullet. During the shooting, Bledsoe dropped the bag of marijuana on the ground and ran away. Bledsoe stated that he and Spears ran inside Wal-Mart and out the back door, where they were found by Key. Key then drove Bledsoe and Spears to the hospital.
¶ 3. Reginald Kathy was walking toward the Wal-Mart store when he heard several gunshots. Kathy stated that after he heard the gunshots, he saw two men running away from the scene. Kathy testified that he saw a black Dodge Magnum with tinted windows driving slowly toward where the two men were running before the car turned and left the parking lot. Kathy stated that he recognized Lamar as the driver.
DISCUSSION
I. DID THE TRIAL COURT ERR IN FAILING TO GRANT LAMAR’S MOTION FOR A NEW TRIAL OR, IN THE ALTERNATIVE, A JUDGMENT NOTWITHSTANDING THE VERDICT?
¶ 4. In his first issue on appeal, Lamar argues that the trial court erred in failing to grant his motion for a new trial or, in the alternative, a judgment notwithstanding the verdict. Lamar contends that the aggravated assault conviction was against the overwhelming weight of the evidence and that there was insufficient evidence to support the possession conviction. As each argument relies upon different standards of review, we will discuss them separately.
*367 A. Overwhelming Weight of the Evidence
¶ 5. Our standard of review concerning the overwhelming weight of the evidence is well settled: “[W]e will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005) (citing Herring v. State, 691 So.2d 948, 957 (Miss.1997)). The appellate court sits as a hypothetical “thirteenth juror.” Id. Therefore, the Court weighs the evidence “in the light most favorable to the verdict.” Id. If, in this position, the Court disagrees with the verdict of the jury, “the proper remedy is to grant a new trial.” Id.
¶ 6. Lamar contends that the State failed to prove beyond a reasonable doubt that he was guilty of aggravated assault. Lamar argues that the testimony does not prove he was the shooter. Lamar bases his contention on the initial statements made by Spears and Bledsoe to the police. Spears and Bledsoe did not want to admit they were smoking marijuana with Lamar, nor did Bledsoe want to admit that he stole a bag of marijuana from Lamar, so they initially told the police that they were exiting Wal-Mart when the shooting began. However, Spears and Bledsoe eventually admitted to the police that they were with Lamar in Lamar’s black Dodge Magnum prior to the shooting. Spears testified that he saw Lamar leaning from the car window holding a gun. Kathy testified that, immediately after hearing gunshots, he saw Lamar in a black Dodge Magnum.
¶ 7. We cannot find that, with the evidence produced at trial, upholding the verdict of guilty would sanction an unconscionable injustice. This issue is without merit.
B. Legal Sufficiency of the Evidence
¶ 8. Our standard in regard to challenges relating to the legal sufficiency of the evidence is well settled: In reviewing the sufficiency of the evidence, “all evidence supporting a guilty verdict is accepted as true, and the [State] must be given the benefit of all reasonable inferences that can be reasonably drawn from the evidence.” Bell v. State, 910 So.2d 640, 646(¶ 16) (Miss.Ct.App.2005) (citing McClain v. State, 625 So.2d 774, 778 (Miss.1993)). Furthermore, the jury determines the credibility of witnesses and resolves conflicts in the evidence. Evans v. State, 725 So.2d 613, 680-81 (¶ 293) (Miss.1997).
¶ 9. Lamar argues that the evidence was insufficient to prove that the bag of marijuana belonged to him. The jury heard the testimony from Spears, who saw Bled-soe take a large bag from Lamar’s car, and Bledsoe, who admitted to stealing a large bag of marijuana from Lamar’s car, and found their stories to be credible. Accepting as true all the evidence supporting the guilty verdict, we cannot find that Lamar’s motion for a JNOV should have been granted. This issue is without merit.
II. DID LAMAR RECEIVE INEFFECTIVE ASSISTANCE OF COUNSEL?
¶ 10. In his second issue on appeal, Lamar cites to several instances that he contends show the ineffectiveness of his trial counsel. To prevail on this issue Lamar must demonstrate that his trial counsel’s performance was deficient and the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We will address Lamar’s complaints separately.
A. Failure to Object to the Testimony of Reginald Kathy
¶ 11. Lamar states that during voir dire neither the State nor his counsel *368 asked the jury whether they knew Kathy. Lamar contends that because of this, his attorney should have objected to the testimony of Kathy. We do note that Kathy’s name was on a long list of witnesses subpoenaed for trial. However, Lamar has not pointed to how he was prejudiced by his attorney’s failure to object in this manner. This issue is without merit.
B. Failure to Seek a Change of Venue
¶ 12. Lamar claims that his attorney was ineffective in failing to seek a change in venue. Lamar contends that the shooting had been highly publicized; thus, he could not receive a fair trial in Panola County. Lamar cites to several newspaper articles describing the shooting: one of the articles does not mention Lamar by name; another article concerns Lamar turning himself in to authorities; another article is a list of persons, including Lamar’s name and his alleged crimes, referred to the grand jury; the final article is another list of persons who have been charged with crimes, including Lamar’s name and charge. We fail to see how this level of newspaper reporting rises to the level of “extraordinary and intensely prejudicial pretrial publicity” necessary for a change in venue. See Davis v. State, 767 So.2d 986, 993(¶ 16) (Miss.2000). Furthermore, Lamar’s crime does not fall under one of the exceptions that cannot be refuted by the prosecution during voir dire as enumerated by the supreme court in White v. State, 495 So.2d 1346, 1349 (Miss.1986). We find no merit to this issue.
C. Failure to Call a Witness to Testify on His Behalf
¶ 13. Lamar contends that his attorney was ineffective for failing to call Walter Earl Ware to testify on his behalf. Lamar states that Ware’s testimony would have cast doubt on the credibility of the State’s witnesses. However, according to the record, Ware was subpoenaed by the State to appear at trial. For reasons unknown and with no assistance from the State’s brief, Ware was never called to testify by the State. In his statement to the police, Ware saw two men (Bledsoe and Spears) run inside Wal-Mart while being chased by another man (Lamar). We cannot find anything in the statement that Lamar claims would show another shooter. This issue is without merit.
D.Failure to Allow Lamar to Testify in His Own Defense at Trial
¶ 14. Lamar states that he was denied the right to testify in his own defense. Lamar’s contention is merely a general assertion, and he fails to support this assertion with evidence from the record. This issue is without merit.
III. DID THE TRIAL COURT ERR IN ALLOWING CERTAIN EVIDENCE TO BE INTRODUCED INTO THE RECORD?
¶ 15. In his third issue on appeal, Lamar argues that the trial court erred in allowing a cell phone found in the parking lot to be introduced into evidence. However, Lamar failed to object at trial to the admission of the cell phone into evidence. “[T]he failure to object at trial to the introduction of evidence bars the accused from objecting to the introduction of that evidence at a later date.” Waldon v. State, 749 So.2d 262, 266(¶ 8) (Miss.Ct.App.1999) (citing Robinson v. State, 585 So.2d 735, 737 (Miss.1991)). This issue is deemed waived for appellate purposes.
IV. DID THE TRIAL COURT ERR IN REFUSING LAMAR’S JURY INSTRUCTION D-4?
¶ 16. In his fourth issue on appeal, Lamar argues that the trial court erred in refusing his jury instruction D-4. Lamar’s instruction D-4 was an identity *369 instruction that told the jury that the State had to prove the accuracy of the identification of Lamar as the perpetrator of the crime. In reviewing the denial of a jury instruction, the appellate court must consider not only the denied instruction but also all of the instructions that were given to ascertain if error lies in the refusal to give the requested instruction. See Coleman v. State, 697 So.2d 777, 782 (Miss.1997). “A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in another instruction, or is without foundation in the evidence.” Heidel v. State, 587 So.2d 835, 842 (Miss.1991) (internal citations omitted).
¶ 17. The trial court stated that instruction D-4 was misleading to the jury. The trial court held that: “It doesn’t warrant a jury instruction as to whether or not they [Bledsoe and Spears] misidentified who they say they were in the car smoking dope with ... and I think it is a totally improper instruction for this factual case.” The trial court further noted that there was another instruction addressing the jury’s function to determine the credibility of witnesses. Upon review of the instructions, it is clear that the jury was properly instructed. This issue is without merit.
V. DID THE TRIAL COURT ERR IN FAILING TO ISSUE A CAUTIONARY INSTRUCTION?
¶ 18. In his fifth issue on appeal, Lamar argues that the trial court erred in failing to issue a cautionary instruction in regard to the testimony of Bledsoe and Spears, whom Lamar describes as “co-conspirators.” Both Bledsoe and Spears were originally charged with possession of marijuana, but the charges were later dropped. We note that Lamar never requested a cautionary instruction. Although Bledsoe and Spears are not identified as such, it is true that a jury may be instructed that it should regard the testimony of co-conspirators with great caution. Slaughter v. State, 815 So.2d 1122, 1134-35 (¶¶ 64-68) (Miss.2002). However, the granting of a cautionary instruction with regard to co-conspirator testimony is within the trial court’s discretion. Wheeler v. State, 560 So.2d 171, 173 (Miss.1990). Here, no request for the cautionary instruction was made. This issue is without merit.
YI. DOES THE CUMULATIVE EFFECT OF THE ERRORS REQUIRE REVERSAL?
¶ 19. In his final issue on appeal, Lamar argues that the cumulative effect of all the errors requires this Court to reverse his convictions. Having found Lamar’s arguments to be without merit, we find no cumulative error that would necessitate a reversal. Therefore, we affirm.
¶ 20. THE JUDGMENT OF THE PA-NOLA COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, AGGRAVATED ASSAULT WITH A DEADLY WEAPON, AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER AND COUNT II, POSSESSION OF A CONTROLLED SUBSTANCE, AND SENTENCE OF SIX YEARS OF POST-RELEASE SUPERVISION, WITH SENTENCE IN COUNT II TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., MYERS, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, *370 JJ„ CONCUR. ROBERTS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER, GRIFFIS AND CARLTON, JJ.