# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CP-02035-COA

| | |
|---|---|
| KERRY L. MORGAN A/K/A KERRY LOUIS MORGAN A/K/A BONES | APPELLANT |

v.

| | |
|---|---|
| STATE OF MISSISSIPPI | APPELLEE |

| | |
|---|---|
| DATE OF JUDGMENT: | 10/10/2013 |
| TRIAL JUDGE: | HON. JAMES MCCLURE III |
| COURT FROM WHICH APPEALED: | YALOBUSHA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KERRY L. MORGAN (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: MELANIE DOTSON THOMAS |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| TRIAL COURT DISPOSITION: | DISMISSED MOTION FOR POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED: 04/14/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ROBERTS AND FAIR, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.     Mississippi law provides that the sentences of habitual offenders "shall not be reduced or suspended." Kerry Morgan was indicted and convicted as a habitual offender, but pursuant to a plea agreement, the circuit court ordered that he serve most of his sentence on post-release supervision. Morgan, who violated the conditions of his release and had it revoked, now argues that he could not have actually been sentenced as a habitual offender. He demands that his sentence be modified to relieve him of the various restrictions placed on habitual offenders – i.e., he wants to be eligible for earned time and parole.

¶2.    We find that Morgan was clearly sentenced as a habitual offender and that he cannot complain of having received a sentence that was illegal only because it was too lenient.  As noted in Judge Roberts's concurrence, Morgan's own behavior has removed that leniency and corrected the defect of which he complains.  We affirm the circuit court's dismissal of Morgan's motion for post-conviction relief.

## STANDARD OF REVIEW

¶3.    The circuit court may summarily dismiss a PCR motion without an evidentiary hearing "[i]f it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief."  Miss. Code Ann. § 99-39-11(2) (Supp. 2014).  To succeed on appeal, the petitioner must: (1) make a substantial showing of the denial of a state or federal right and (2) show that the claim is procedurally alive.  *Young v. State*, 731 So. 2d 1120, 1122 (¶9) (Miss. 1999).

¶4.    When reviewing the denial of a PCR motion, an appellate court "will not disturb the trial court's factual findings unless they are found to be clearly erroneous."  *Callins v. State*, 975 So. 2d 219, 222 (¶8) (Miss. 2008).  Our review of the summary dismissal of a PCR motion, a question of law, is de novo.  *Young*, 731 So. 2d at 1122 (¶9).

## DISCUSSION

### 1.  Procedural Bars / Res Judicata

¶5.    Morgan was indicted in 2002 on charges of receiving stolen property and aggravated

assault on a police officer, as a habitual offender.[1] Morgan pled guilty in January 2004, again as a habitual offender, and received sentences which were stated to be as a habitual offender, but nonetheless provided for an early conditional release from prison. Morgan's post-release supervision, and with it his early release, was revoked on March 11, 2005, after he was found to have committed several acts of forgery.

¶6.     Morgan subsequently filed a PCR motion challenging the revocation. Specifically, he argued that his conditional release could not be revoked because he was never convicted of the forgeries. The circuit court disagreed, and this Court affirmed on appeal. *Morgan v. State*, 995 So. 2d 787 (Miss. Ct. App. 2008).

¶7.     Morgan submitted the instant motion in October 2012. The circuit court, in a detailed written opinion, found this second PCR motion time-barred and barred as a successive writ (though the court did, in the alternative, reject the claim on the merits). Morgan argues that he is challenging a sentence as illegal on its face, which implicates his fundamental constitutional right to be free from an illegal sentence. This claim is excepted from the procedural bars and res judicata under the Mississippi Supreme Court's recent decision in *Smith v. State*, 149 So. 3d 1027, 1032 (¶13) (Miss. 2014).

### 2. Legality of Sentences

---

[1] Morgan was also indicted in Tallahatchie County on charges of burglary of a dwelling and receiving stolen property. He pled guilty to those charges pursuant to the same plea agreement as the Yalobusha convictions and received similar sentences. The proceedings have often been connected, but the Tallahatchie convictions are not challenged by the PCR motion we consider today.

¶8. The heart of Morgan's claim is that he was illegally sentenced as a habitual offender, or, as he phrases it, that he was illegally resentenced as a habitual offender when he was found to have violated the terms of his conditional release. The record simply does not bear out his claim of resentencing by revocation. Morgan's indictment, his petition to enter a guilty plea, numerous statements during the plea colloquy, and the sentencing order all state that Morgan was convicted and sentenced as a habitual offender. At one point, after the State put on its proof of Morgan's prior convictions, Morgan and the judge reminisced about Morgan's prior exploits. It was never suggested that Morgan was charged, convicted, and sentenced as anything but a habitual offender.

¶9. Morgan does not dispute that, exactly, but he argues that the sentence did not satisfy the habitual offender statute under which he was sentenced, Mississippi Code Annotated section 99-19-81 (Supp. 2014). It provides:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

Morgan received the maximum sentences for the two offenses, "in the Mississippi Department of Corrections," but the sentencing orders provided that most of the time would be served on post-release supervision. The State points out that there are numerous examples of such sentences being noted without comment in prior Mississippi appellate decisions. It

4

further contends that this was not an illegal sentence at all, because section 99-19-81 does not specifically preclude post-release supervision.

¶10.   We do not agree.  Section 99-19-81 requires that a habitual offender be sentenced to the "maximum term of imprisonment," which "shall not be reduced or suspended."  While the State is correct that trial courts have occasionally disregarded the statute to award more lenient sentences than it permits, it is not true that the practice has passed without comment. *See, e.g., Philips v. State*, 25 So. 3d 404, 408 (¶12) (Miss. Ct. App. 2010); *Lamar v. State*, 983 So. 2d 364, 370-73 (¶¶21-32) (Miss. Ct. App. 2008) (Roberts, J., specially concurring) ("It is statutorily impossible for a habitual offender's sentence to include a period of post-release supervision.").  We take this opportunity to state that, while we recognize that the trial courts may deviate from the statute in exceptional circumstances if it is constitutionally required, the laws of our State should not be casually disregarded as a matter of day-to-day plea bargaining, as appears to have happened here.  *See Aranyos v. State*, 115 So. 3d 116, 123-25 (¶¶24-29) (Miss. Ct. App. 2013) (Roberts, J., concurring in part and in result).

¶11.   Nonetheless, even though Morgan's sentence did not conform to the statute, its failure is that it was too lenient.  In such a case, our supreme court has flatly stated that "[t]he law which relieves defendants from the burden of an illegal sentence applies to situations where the defendant is forced to suffer a greater sentence rather than the luxury of a lesser sentence."  *Sweat v. State*, 912 So. 2d 458, 461 (¶9) (Miss. 2005).  Any such error is thus

5

harmless. *Id.* The trial court did not err in dismissing Morgan's PCR motion.

¶12. **THE JUDGMENT OF THE CIRCUIT COURT OF YALOBUSHA COUNTY DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO YALOBUSHA COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL AND JAMES, JJ., CONCUR. ROBERTS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., GRIFFIS, P.J., AND FAIR, J.**

**ROBERTS, J., SPECIALLY CONCURRING:**

¶13. We are, once again, confronted with the nagging question: "Exactly what is an 'illegal' sentence, and what should we do about it?"

¶14. Kerry L. Morgan is a career felony offender. In 1982, he was convicted of uttering a forgery in Leflore County, and he was sentenced to prison. In 1989, Morgan was convicted of grand larceny in Tallahatchie County, and he was sentenced to prison. In 1991, he was convicted of burglary of an occupied dwelling in Tallahatchie County and sentenced to prison. And in 1995, Morgan was convicted of burglary in Grenada County, and yet again sentenced to prison. That was his status when he stood before Judge Andrew Baker on January 29, 2004, and offered to plead guilty to four new felony charges: two in Yalobusha County for aggravated assault on a law-enforcement officer and receiving stolen property; two in Tallahatchie County for burglary of a dwelling and receiving stolen property. He was forty-four years old and had a sixth-grade education.

¶15. Morgan and his attorney, William L. Maxey, had negotiated a very favorable plea agreement with Assistant District Attorney Smith Murphey. In Count I of the Yalobusha

6

County indictment for aggravated assault on a law-enforcement officer, Morgan would receive a thirty-year sentence as a section 99-19-81 habitual offender, with 386 days to serve, and twenty-eight years and eleven months on post-release supervision (PRS), with five years of his PRS to be reporting. For the receiving-stolen-property count, Morgan would receive a five-year sentence as a section 99-19-81 habitual offender, with 386 days to serve and three years and eleven months on PRS. The sentences were ordered to run concurrently with one another and concurrently with similar sentences in the Tallahatchie case. Morgan had been in pretrial custody on these charges for 386 days prior to appearing before Judge Baker to enter his guilty pleas. In other words, Morgan would be released the day he pled, and he would begin his PRS. If anything is crystal clear from a perusal of the plea colloquy, it is that Morgan fully understood and appreciated the consequences of his pleas, as well as the consequences of future revocations as a habitual offender.

¶16. Morgan's criminal history and 20/20 hindsight indicate that his plea agreement and sentencing had set him up for failure. And fail he did. Eleven months later, on December 30, 2004, Assistant District Attorney Murphey filed a petition to revoke Morgan's PRS based on four new uttering check forgeries. A revocation hearing took place on March 11, 2005, before Judge Baker, who considered the hearing to be one on whether or not to revoke Morgan's "suspended" sentence. After hearing from numerous witnesses, including Morgan's mother, and the owners and employees of the various stores where Morgan presented the forged checks, Judge Baker revoked Morgan's PRS and sentenced Morgan to

7

serve twenty-eight years and eleven months in MDOC custody as a section 99-19-81 habitual offender. Interestingly, Morgan's mother testified that Morgan admitted to her that he had cashed, or attempted to cash, his stepfather's stolen checks, so he could pay $1,200 to his drug dealer, who had threatened him if he failed to pay.

¶17. Now, some fourteen years after his revocation, Morgan claimed in his second PCR motion that his sentence as a habitual offender is "illegal." He requested that the habitual-offender portion of his sentence "be stricken" as unlawful.

¶18. Without doubt, the supreme court has declared violations of fundamental constitutional rights are not subject to the procedural bars of the Uniform Post-Conviction Collateral Relief Act. *Rowland v. State*, 42 So. 3d 503, 506 (¶9) (Miss. 2010). And the circuit court's imposition of an illegal sentence is a violation of a fundamental constitutional right, according to the supreme court. *Sneed v. State*, 722 So. 2d 1255, 1257 (¶11) (Miss. 1998) (citation omitted). Consequently, Morgan is not procedurally barred from asserting that his sentence is illegal. That assertion is not a facial claim, but deserves appellate scrutiny.

¶19. In the most generic sense, a felony sentence exceeding the maximum possible statutory sentence allowed for the crime committed is an unlawful sentence. *See Foster v. State*, 148 So. 3d 1012, 1016 (¶12) (Miss. 2014). Morgan received thirty years for aggravated assault on a law-enforcement officer, which was the maximum sentence authorized by the statute then in effect. *See* Miss. Code Ann. § 97-3-7(2)(b) (Rev. 2014).

But Morgan pled as, and was adjudicated to be, a section 99-19-81 habitual offender, which makes it mandatory that the circuit court sentence a habitual offender to the "maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation." The statute was effective on July 1, 1977, and has not been amended since.

¶20. Mississippi Code Annotated section 47-7-34 (Supp. 2014) was enacted in 1995 and states:

> (1) When a court imposes a sentence upon a conviction for any felony committed after June 30, 1995, the court, in addition to any other punishment imposed if the other punishment includes a term of incarceration in a state or local correctional facility, may impose a term of post-release supervision. However, the total number of years of incarceration plus the total number of years of post-release supervision shall not exceed the maximum sentence authorized to be imposed by law for the felony committed. The defendant shall be placed under post-release supervision upon release from the term of incarceration. The period of supervision shall be established by the court.

> (2) The period of post-release supervision shall be conducted in the same manner as a like period of supervised probation, including a requirement that the defendant shall abide by any terms and conditions as the court may establish. Failure to successfully abide by the terms and conditions shall be grounds to terminate the period of post-release supervision and to recommit the defendant to the correctional facility from which he was previously released. Procedures for termination and recommitment shall be conducted in the same manner as procedures for the revocation of probation and imposition of a suspended sentence as required pursuant to Section 47-7-37.

> (3) Post-release supervision programs shall be operated through the probation and parole unit of the Division of Community Corrections of the department. The maximum amount of time that the Mississippi Department of Corrections may supervise an offender on the post-release supervision program is five (5) years.

Section 47-7-34 contemplates that the offender actually serve the initial portion of his sentence in custody. But the PRS portion of his sentence shall be conducted in the same manner as a like period of probation, and probation may only be granted when part of the sentence has been suspended. *See* Miss. Code Ann. § 47-7-33 (Supp. 2014). Procedures for termination and recommitment of PRS shall be conducted in the same manner as procedures for the revocation of probation and imposition of a suspended sentence. Miss. Code Ann. §47-7-34(2). Judge Baker stated at the revocation hearing that he was revoking Morgan's "suspended" sentence. Supervision on probation or PRS can only occur when the inmate has been released from actual physical custody, returned to his home or civilian community, and thereby subject to supervision by MDOC probation or parole officers or the circuit court. Consequently, I can only conclude that Morgan's sentence to PRS as a habitual offender violates the mandate that a habitual offender's maximum sentence cannot be reduced or suspended, or subject to probation or parole. Hence, neither Morgan's initial nor his revoked sentences as a habitual offender are lawful.

¶21.    The next question is, what does an appellate court do on a PCR appeal if the circuit court, after a guilty plea, imposes an illegal sentence pursuant to a plea agreement? On the one hand, and in the context of a previously convicted felon who plea bargains for a suspended sentence and probation, but later complains after revocation that his initial sentence was unlawful because it violated the mandates of section 47-7-33, we have held that a prisoner cannot complain of an "illegally lenient sentence." *See Moore v. State*, 976 So.

10

2d 930, 931 (¶7) (Miss. Ct. App. 2007) (citation omitted). And the supreme court has specifically agreed with this analysis. *Sweat v. State*, 912 So. 2d 458, 461 (¶9) (Miss. 2005) ("The law which relieves defendants from the burden of an illegal sentence applies to situations where the defendant is forced to suffer a greater sentence rather than the luxury of a lesser sentence. We agree with the Court of Appeals and therefore adopt its approach."). No doubt when Morgan initially pled guilty and was released on PRS, he could not complain because his sentence was "illegally lenient." But upon revocation, Morgan received twenty-eight years and eleven months as a habitual offender, which was the maximum and most harsh sentence available for aggravated assault on a law-enforcement officer. And now, Morgan requests that his habitual-offender status be stricken from his sentencing order since an adjudicated habitual offender can never receive PRS.

¶22. On the other hand, the supreme court has set aside a sentence when the bargained-for sentence was an "unlawful" one because it violated "public policy." *See Lanier v. State*, 635 So. 2d 813, 816 (Miss. 1994) (overruled on other grounds). Johnny Lanier brutally murdered a law-enforcement officer, who was acting in her official capacity, attempting to quell a domestic-violence incident. *Id.* at 815. Lanier was convicted of capital murder and sentenced to death. *Id.* Upon remand for a new sentencing hearing, Lanier entered into a plea agreement where he agreed to a sentence of life without parole. *Id.* The circuit court, pursuant to the plea agreement, sentenced Lanier to life without parole. *Id.* At the time of his guilty plea, Lanier was represented by five very competent attorneys, who sought to avoid

11

a possible death sentence. *Id.* However, at the time of the crime and sentencing, the only two authorized punishments for capital murder were death or life with parole eligibility after ten years. *Id.* at 816. The supreme court held the sentence of life without parole was, at that time, in contravention of the public policy as expressed by the Legislature and void. *Id.* at 816-17. As the supreme court noted: "The judiciary is responsible for trying those accused of crimes and for imposing sentences authorize by the [L]egislature." *Id.* at 816. Justice Hawkins eloquently stated in his concurring opinion:

> As the majority points out, however, a circuit court's authority to put a man in the penitentiary comes solely from, and is governed entirely by[,] statute. The statute is his only authority for the time and *terms of the defendant's commitment*. In the absence of statute, a circuit judge simply has no authority to order a man to serve time in the penitentiary or impose the *conditions of his sentence*.

*Id.* at 820 (emphasis added). The supreme court set aside Lanier's sentence and remanded for another sentencing hearing, with the jury option of the death penalty on the table. *Id.* at 817 (majority opinion).

¶23. The same can be said in Morgan's case. The Legislature has expressed the public policy of this State in section 99-19-81, that offenders who are correctly adjudicated to be habitual offenders in accordance with that statute *shall receive* the maximum possible sentence for the crime, without reduction or suspension of sentence, probation, or parole. This is a legislative determination that certain career felony offenders, who have repeatedly demonstrated an unwillingness or inability to live by society's laws, should be imprisoned for the maximum sentence without any type of early release; society's ultimate claim to self-

12

defense, if you will. Morgan certainly fits that definition. For Morgan to have received PRS, like Lanier, who received life without parole, is a violation of the public policy of this State. To be consistent with *Lanier*, we should declare his PRS sentence void, set aside his guilty plea and sentence, and remand for trial.

¶24. Until the supreme court definitively answers the question of whether an adjudicated habitual offender can be sentenced to some form of a split sentence, including PRS or probation pursuant to a plea bargain, I am inclined to, and do, concur with the majority's affirmance. I do so with some degree of reluctance, since I do not intend to encourage such a practice, which seems to have become somewhat prevalent across this state. Conversely, I believe such to be fraught with problems, as clearly demonstrated by Morgan's case. But because Morgan specifically pled freely, knowingly, and intelligently to aggravated assault on a law-enforcement officer, as a section 99-19-81 habitual offender, the only lawful sentence he could have received initially was thirty years in the custody of the MDOC, as a habitual offender. And that is the exact sentence he is now serving. Consequently, I concur.

**LEE, C.J., GRIFFIS, P.J., AND FAIR, J., JOIN THIS OPINION.**